IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.E., et al., | : | CIVIL ACTION |
| | : | NO. 10-2958 |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| BOYERTOWN AREA SCHOOL DISTRICT, | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                    FEBRUARY 4, 2011

TABLE OF CONTENTS

I.   INTRODUCTION...............................................3

II.  BACKGROUND.................................................4

III. DISCUSSION.................................................6

        A.   The IDEIA............................................6

        B.   Providing an Appropriate IEP........................7

        C.   Tuition Reimbursement...............................9

        D.   Standard of Review.................................10

        E.   Hearing Officer Culleton's Decision................11

             1.   The Hearing Officer's Factual
                  Findings......................................11

                  a)   Program Planning and
                       Litigation History.......................11

                  b)   The July 7, 2009 IEP for the
                       2009-2010 School Year....................17

2. The Hearing Officer's Legal
Conclusions...................................21

    a) Appropriateness of the Proposed
    Placement.................................21

    b) Pendency.................................22

    c) Parents' Testimony
    and Criticism.............................22

    d) Experts' Testimony.......................23

    e) Timeliness of the
    District's Offer..........................24

    f) Procedural Deficiencies..................24

F. Plaintiffs' Motion for Judgment
on the Record...................................25

1. The Hearing Officer Erred in Failing
to Consider the Issue of Whether the
Proposal to Alter J.E.'s Placement
From a Private to a Public School
Setting is Appropriate.........................26

2. The IEP Proffering to Place J.E. in
the Autistic Support Program Does Not
Provide Fair and Appropriate Public
Education......................................26

3. The Hearing Officer's Credibility
Findings Pertaining to J.E.'s Mother
are Unsupported................................28

4. The Hearing Officer's Conclusion that
the Offer of an IEP was Timely and
Complete is Erroneous..........................29

5. The IEP Did Not Adequately Provide
Transitional Services..........................30

6. The IEP is not Appropriate Because
of the Exposure to Bullying....................31

7.   J.E. is Entitled to Continuation of
     the Hill Top Placement or Alternatively
     to Tuition Reimbursement........................32

8.   The Hill Top School is an Appropriate
     Placement for J.E..............................33

G.   Defendant's Motion for Judgment
     on the Record......................................33

IV.  CONCLUSION.............................................35

## I.   INTRODUCTION

Plaintiffs J.E. and the parents of J.E. (J.E. and A.E., "the Parents") (collectively "Plaintiffs"), initiated this action against the Boyertown Area School District ("Defendant" or "District"), seeking the reversal of a Pennsylvania Special Education Hearing Officer's decision that the 2009-2010 Individualized Education Plan ("IEP") that the District proposed was appropriate and that the District would no longer have to reimburse Plaintiffs for private school placement. Plaintiffs argue that this decision denies J.E. his right to a free appropriate public education under the Individuals with Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C. §§ 1412(a), 1414(d) and the Rehabilitation Act of 1973, 29 U.S.C. § 504.

Before the Court are cross motions for judgment on the record. The Court will first discuss the relevant law and applicable standard of review. Then, the Court will provide the

Hearing Officer's findings of fact and conclusions of law. Finally, the Court will analyze the merits of each parties' motion for judgment on the record separately.

For the reasons set forth below, the Court will grant the District's motion and deny Plaintiffs' cross motion; therefore, affirming the Hearing Officer's decision.

## II.   BACKGROUND

On June 21, 2010, Plaintiffs initiated this action against the Boyertown Area School District.[1]  Plaintiffs seek the reversal of Pennsylvania Special Hearing Officer William Culleton, Esq.'s ("Culleton" or "Hearing Officer") decision that the District's IEP for J.E. for the 2009-2010 school year was an appropriate placement.  Plaintiffs claim that the District's proposed IEP fails to provide J.E. with an appropriate placement.  Plaintiffs argue that instead of placing J.E. in the District's Autism Support class ("AS class") at the public Boyertown Area High School ("BAHS"), the appropriate placement for J.E. is at the private Hill Top Preparatory School ("Hill Top") and that J.E.'s parents should be reimbursed for tuition and transportation costs for J.E.'s attendance at the Hill Top.

---

[1]     This Court has jurisdiction as this claim is alleging violations of the Individuals with Disabilities Education Improvement Act, 20 U.S.C. §§ 1412(a), 1414(d).  Thus, the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

Plaintiffs are also seeking attorney's fees and costs.

When the District offered this IEP to J.E., J.E.'s parents disagreed with it and filed for a due process hearing. Hearing Officer Culleton resolved the dispute in favor of the District.  In their Complaint, Plaintiffs attack the Hearing Officer's decision on several grounds: (1) it is based on a non existent document, (2) it ignores the evidence that the District failed to offer a timely IEP, (3) it was not supported by a preponderance of the evidence, (4) it applied the wrong legal standard, (5) it made an erroneous credibility determination finding that Mrs. E's "startled reaction" to a loud sound in the room was evidence that she had a "heightened sensitivity" to the atmosphere of a large school.  (Plf.s' Comp. at ¶ 30.)  On August 30, 2010, Defendant filed its answer, denying Plaintiffs' allegations and asserting numerous defenses.  (See Def.'s Answer.)

On September 2, 2010, Plaintiffs filed a Motion for Preliminary Injunction, arguing that Hill Top was J.E.'s pendent placement and that under the "stay put" provision of the IDEIA the District is responsible for continuing to pay for J.E.'s tuition at and transportation to Hill Top.  (See Plf.s' Mot. for Prelim. Inj.)  On September 16, 2010, the District responded that it should not be responsible for these costs.  (See Def.'s Resp. to Mot. for Prelim. Inj.)  On December 12, 2010, following a

hearing, the Court granted Plaintiffs' motion and ordered the District to pay for J.E.'s tuition costs and transportation to Hill Top.  (Doc. no. 18.)

On December 8, 2010 both parties filed motions for judgment on the administrative record.  These motions as well as the filed responses and replies are currently before the Court.


## III. DISCUSSION

Plaintiffs appeal the determination by Hearing Officer Culleton that the District's proposed IEP for J.E. for July 2009 was an appropriate placement for J.E.


### A. The IDEIA

The purpose of the IDEIA is "to ensure that all children with disabilities have available to them a free appropriate public education."  20 U.S.C. § 1400(d)(1)(A).  A free appropriate public enducation is "an educational instruction 'specially designed  . . . to meet the unique needs of a child with a disability,' § 1401(29), coupled with any 'related services' that are 'required to assist a child with a disability to benefit from [that instruction],' § 1401(26)(A)."  Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 524 (2007) (omission and alteration in original); see generally 20 U.S.C. § 1401(9).

_____B. Providing an Appropriate IEP

        The issue of whether an IEP is appropriate is a question of fact.  S.H. v. State-Operated Sch. Dist. of Newark, 336 F.3d 260, 271 (3d Cir. 2003).  When parents challenge the adequacy of a school's provision of a free and appropriate public education to a child, a reviewing court must: (1) consider whether the school district complied with the IDEIA's procedural requirements[2] and (2) determine whether the educational program was 'reasonably calculated to enable the child to receive educational benefits.'"  Mary Courtney T. v. Sch. Dist. of Philadelphia, 575 F.3d 235, 249 (3rd. Cir. 2009) (quoting Bd. of Educ. v. Rowley, 458 U.S. 176, 189, 207 (1982)).

        When determining whether a proposed IEP was reasonably calculated to enable a child to receive educational benefits, a court must determine the appropriateness of an IEP as of the time

_____

        [2]    Failure to adhere to a procedural requirement under the IDEA does not automatically constitute denial of a free appropriate public education.  See C.M. v. Bd. of Educ. of Union County Reg'l High Sch. Dist., 128 F. App'x. 876, 881-82 (3d Cir. 2005).  Plaintiffs bear the burden of showing that procedural irregularities resulted in a loss of educational opportunity for the student or meaningful participation in the IEP process for the parents.  Id. at 881-82; see also 20 U.S.C. § 1415(f)(3)(E)(ii).
        As the issues raised in this appeal focus on Hearing Officer Culleton's decision that the District's proposed IEP was an appropriate placement for J.E., the Court will go directly to the second evaluation as to whether or not the proposed IEP was reasonably calculated to enable the child to receive educational benefits.

it was made.  Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 762 (3d Cir. 1995).  The court should only use evidence acquired subsequently to the creation of an IEP to evaluate the reasonableness of the school district's decisions at the time that they were made.  Id.  There is no bright line rule for determining whether an IEP is appropriate.  Rather, each case must be assessed on the basis of the particular facts which include the students' aptitudes, abilities, and needs.  D.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 566 (3d Cir. 2010).

Compliance with the IDEIA requires that a student's IEP be "reasonably calculated to enable the child to receive educational benefits."  Rowley, 458 U.S. 176 at 206-07.  Although a school district is required to provide a free and appropriate education to all disabled children, 20 U.S.C. § 1412, it is not required to provide the best possible education to maximize educational benefits.  Rowley, 458 U.S. at 197 n.21; Polk v. Cent. Susquehanna Intermediate Unit 16, 853 F.2d 171, 178 (3d Cir. 1988).  The IDEIA also does not require that a school district provide services "sufficient to maximize each child's potential 'commensurate with the opportunity provided to other children.'"  Id. at 198.

Parents do not have a right to compel a school district to provide a specific program or employ a specific methodology in educating a student.  See Rowley, 458 U.S. at 199 (stating that a

free appropriate public education does not require "the furnishing of every special service necessary to maximize each handicapped child's potential."). Nor is a school district required to provide each disabled child an equal educational opportunity commensurate with the opportunities provided other children. Id. at 198; cf. Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 247 (3d Cir. 1999) (IDEIA requires no more than a "meaningful benefit," which "must be gauged in relation to the child's potential." (quoting Polk, 853 F.2d at 185)).

When the parents believe a child's IEP does not provide a free appropriate public education as required by the IDEA, they may request a due process hearing or a mediation session. See 20 U.S.C. § 1415(e)-(g). The party challenging the IEP bears the burden of establishing its inadequacy. Schaffer v. Weast, 546 U.S. 49, 62 (2005).


        C. Tuition Reimbursement

In Burlington School Committee v. Department of Education of Massachusetts, the Supreme Court held that section 1415(i)(2)(C)(iii)'s grant of authority includes "the power to order school authorities to reimburse parents for their expenditures on private special education services if the court ultimately determines that such placement, rather than a proposed IEP, is proper under the Act." 471 U.S. 359, 369 (1985). The

Court reasoned that, given the length of time required to complete the judicial review process, parents who disagree with a school's proposed IEP face the choice of continuing in public school with the deficient IEP or paying for more appropriate schooling. The Court concluded that mandating that participating States provide a free appropriate public education for every student, Congress could not have intended to require parents either to accept an inadequate public-school education pending adjudication of their claim or bear the cost of a private education if the court ultimately determined that the private placement was proper under the Act. <u>Id.</u> at 370.

      D. <u>Standard of Review</u>

      The Court reviews administrative decisions regarding due process proceedings pursuant to 20 U.S.C. § 1415(i), which provides that the Court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C).

      Judicial review of the administrative decision is conducted as a "modified de novo review" that gives "due weight" to the underlying administrative proceedings. <u>S.H.</u>, 336 F.3d at 270. However, the Court is "free to accept or reject the agency

findings depending on whether those findings are supported by the new, expanded record and whether they are consistent with the requirements of the [IDEA]." Oberti v. Bd. of Educ., 995 F.2d 1204, 1220 (3d Cir. 1993).

The factual findings of the hearing officer are considered prima facie correct, and the "reviewing court is not to substitute its own notions of sound educational policy for those of local school authorities." S.H., 336 F.3d at 270 (quotation omitted); see also Oberti, 995 F.2d at 1219. The reviewing court must "defer to the hearing officer's findings based on credibility judgments unless the non-testimonial, intrinsic evidence in the record would justify a contrary conclusion or unless the record read in its entirety would compel a contrary conclusion." S.H., 336 F.3d at 270 (quotation omitted).

## E. Hearing Officer Culleton's Decision

The Court will summarize the Hearing Officer's findings of fact and conclusions of law.

### 1. The Hearing Officer's Factual Findings

#### a) Program Planning and Litigation History

In August 2008, J.E. was entering tenth grade at the

Vanguard School ("Vanguard"), an approved private school.  He had been placed there by the Northampton School District pursuant to an IEP.  The District had implemented the Northhampton IEP and the placement at Vanguard after J.E. and his Parents moved into the District at the beginning of the 2001-2002 school year.

In August 2008, Parents provided an Independent Educational Evaluation to the District concerning J.E.  The independent evaluator diagnosed J.E. with Asperger's Syndrome, a Reading Disorder in Comprehension and Fluency, a Mathematics Disorder, a Writing Disorder, and a Learning Disorder in the area of auditory and visual processing.

In September 2008, the Parents unilaterally removed J.E. from Vanguard and enrolled him at Hill Top, without the consent of the District.  Based on the private evaluation submitted by the Parents, as well as its own evaluation, the District issued a Reevaluation Report dated October 31, 2008.  The Report identified J.E. with Autism.  It found that J.E. exhibited high to average verbal comprehension, average perceptual reasoning and working memory, and very low processing speed.  His reading and mathematics performance were poor.  His reading decoding was average, but his fluency and comprehension were poor due to low processing speed in all areas of testing.  His expressive language and perspective taking skills were problematic.  He demonstrated problems with speech fluency,

pitch, pragmatics, and problem solving.  Written sentence structure was also problematic.

The October 31, 2008 report found that J.E. exhibited "a mild disorder in pragmatic skills and problem solving skills and a mild disorder in fluency and pitch.  His articulation and receptive and expressive skills were within normal limits."  The Report found that J.E. needed a small classroom setting, specially designed instruction in all content areas, individualized instruction in reading, direct instruction in reading, mathematics and writing, a social skills program with a focus on perspective taking, speech therapy throughout his school day and not in an isolated setting, and a highly structured environment.  The Report also found that J.E. needs advanced warning for transitions and social scripts.

In November 2008, the District's Director of Special Education submitted to the District Board a budget proposal to open a new Autism Support ("AS") class at BAHS.  The Board preliminarily and informally approved the budget item for this class in January 2009.  The Director then began planning for the new class, a process that continued until after June 25, 2009. By the end of June, the District Board approved the budget for the new class and the Director began staffing, and development of the operational plan and protocols.  The class opened on September 2, 2009, the first day of school for that year.

On March 18, 2009, the Parents wrote a check for a deposit to Hill Top to reserve a place in its 2009-2010 class for J.E., signed a contract to pay the tuition for the school year, and signed an enrollment form. The deadline for financial assistance for the 2009-2010 school year was March 20, 2009.

On March 19, 2009, Special Education Hearing Officer Anne Carroll issued a due process decision finding that the Student's placement at Hill Top in the 2008-2009 school year had been appropriate, and ordering that the District reimburse tuition payments made by the Parents for that school year.

On or about April 1, 2009, the District issued a request to reevaluate J.E. The request included "Academic, Social/Emotional assessments to the extent required," review of HTPS records, Speech/Language assessment and Occupational Therapy Assessment. The Parents replied by letter dated April 14, 2009, questioning the need for reevaluation. On May 1, 2009, after additional correspondence with the District by themselves and their attorney, the Parents provided permission to conduct limited evaluations, including speech language, occupational therapy and achievement testing. Additionally, the Parents permitted the District to access Hill Top's records for J.E.

On May 26, 2009, the District's Speech/Language evaluator entered an addendum into the October 2008 Reevaluation Report, based upon classroom observation and interview of J.E. in

Hill Top, testing, Hill Top teacher pragmatic profiles and a
review of records.  The evaluator found that J.E. continues to
exhibit a disorder in pragmatic skills, problem solving, speech
fluency and pitch.  The evaluator recommended individual and
small group explicit teaching with reinforcement throughout the
school day.

On May 26, 2009, the District's Occupational Therapy
evaluator entered an addendum into the October 2008 Reevaluation
Report, based upon classroom observation and interview of J.E. in
Hill Top, testing, Hill Top teacher pragmatic profiles and a
review of records.  The evaluator found that J.E. suffers from
mild to moderate sensory processing dysfunction, with inadequate
coping strategies.  The evaluator recommended placement in a
public high school setting to challenge J.E. to learn adequate
coping strategies.

In their letter, the Parents requested an IEP meeting
with Hill Top.  The District replied, offering to meet to discuss
the requested reevaluation, by letters dated April 20 and April
23, 2009.  The Parents reiterated their request for an IEP
meeting by letter dated April 22, 2009.  The District offered
dates for an IEP or evaluation meeting on April 20, May 1, and
June 11, 2009, and the meeting was held on June 25, 2009.  The
Parents, although they had agreed to that meeting date, received
less than one day's confirmation of its scheduling.  Although

they had requested that the meeting take place at Hill Top, to permit J.E.'s participation and that of his teachers, the meeting was scheduled at BAHS.

During this period of time, an appeal to the District Court and other litigation was commenced concerning the District's requirement that Parents advance security before it would fund the placement ordered by Hearing Officer Carroll. On June 24, 2009, the Parents received from the District a fifty one page draft IEP for discussion. The Parents rejected this IEP at the meeting the next day.

The Parents concluded that the IEP was inadequate because BAHS is a large public high school with numerous students. The Parents also objected to putting J.E. into an atmosphere where typical students and children with disabilities are educated together because this necessitates singling out the children with disabilities for special or unusual treatment, such as having assistance in inclusive settings and assignment to special education classes. The Parents were especially concerned with the risk of bullying and concluded that this risk was unacceptably high at BAHS.

On July 7, 2009, the District offered a placement at the new AS class, with a program including inclusion, supportive services, specially designed instruction, related services and measurable educational goals. This offered program and placement

were revised at a resolution session on August 20, 2009.  The
District offered a plan to have J.E. come into the BAHS building
before the first day of classes to meet with his teachers.

      b) <u>The July 7, 2009 IEP for the</u>
<u>2009-2010 School Year</u>

      The teacher assigned to the new BAHS AS class is a
certified special education teacher with thirteen years of
experience, including teaching students identified with Autism
and Asperger's Syndrome.  Although the teacher does not have a
Masters degree, she has most of the credits necessary for such a
Masters equivalency.  She has experience teaching reading in a
learning support classroom.  She is supervised by the Director of
Special Education for the District, and has access to her.  The
teacher is reputed and admitted to be very capable as a special
education teacher.  The Intermediate Unit provided consultative
support to the teacher in starting the AS class.

      The AS class in 2009-2010 appropriately serves seven
students, ranging from tenth graders to twelfth graders.  Not all
are identified with Asperger's Syndrome, though all but one are
identified with Autism.  The staffing is one teacher and two
aides.  The class is functioning well and has not experienced any
significant problems.  The class provides supportive services in
inclusion and other settings through the aides assigned to the AS
class.  Lunch is partially supervised, depending on the students'

need for support in the lunchroom setting.

Social skills are taught in the AS class and progress monitoring data is taken across all classes.  Academic skills are reinforced and academic learning problems are addressed individually.  A certified speech/language pathologist teaches social skills once per week to the entire group.

The District provides a special education mathematics class that is based upon a computer-based curriculum.  The AS class provides support through its assigned aides.  The District also provides a research based special education reading class. The District offered two measurable goals in reading, addressing J.E.'s needs in reading comprehension.  The District offered five measurable goals in mathematics, addressing J.E.'s needs in fluency and mathematics concepts.  The District offered two measurable written expression goals, addressing J.E.'s needs in sentence formation, conventions and organization, which would be implemented by the AS class teacher, who would monitor progress according to the IEP through the PSSA writing rubric.

The District also offered six measurable speech/language goals, addressing J.E.'s needs in conversation, perspective taking, requesting help, problem solving, speech fluency and pitch variety.  These would be provided in speech/language therapy by a certified speech/language pathologist.  The District offered three occupational therapy

goals, addressing J.E.'s sensory needs for self-regulation.  The District offered one goal in self-advocacy, which appears to be measurable, but whose measurement formulation is unclear.  The District offered one social skills goal addressing J.E.'s need to develop the ability to make friends, which appears to be measurable, but whose measurement formulation is unclear.  The District offered one goal in anxiety regulation, which addresses J.E.'s emotional needs, and which appears to be measurable, but whose measurement formulation is unclear.

At least four students in the class have transitional plans with goals of college admission.  The AS class provides all students with instruction and resources to identify and pursue career goals based upon self-identification of personal preferences and skills, and follows their IEP transition goals.  The program provides support for transition to college including visiting college campuses.  The District offered to provide this program to J.E. and to individualize it through IEP goals.  The District offered J.E. five periods of special education classes, including the AS class, the special education mathematics class, and the special education reading class.  The schedule originally proposed was adjusted in consultation with the Parents.

The District offered J.E. specially designed instruction including social scripts, specific visual feedback, advanced warning and discussion of transitions, video modeling

techniques, assignment chunking with detailed calendar, slower paced instruction, clear role definition when working in groups, specific social skill instruction, role playing, community based instruction in social skills, and sensory diet. The District offered related services including two aides assigned to the AS class, speech and language services, occupational therapy services, one-to-one classroom paraprofessional assigned to the Student as needed, school counselor, and transportation.

The District offered to provide support to school personnel including a District behavior specialist, Intermediate Unit consultation, District and Intermediate Unit autism consultants, a transition consultant from the Intermediate Unit, a school based therapist and weekly staff meetings to discuss J.E.'s transition needs and speech/language/occupational therapy progress.

The District offered to provide transition services for J.E. relating to his transition from Hill Top to BAHS. These included opportunities to navigate the BAHS building with a map before the first day of classes, when there would be few if any other students present; to follow the proposed schedule during the summer; to meet and question his proposed teachers; very, very detailed written information with visuals given daily about events at BAHS and projected environmental conditions, including crowding in halls and bells and other signals; teaching skills

regarding locker and cafeteria use and student procedures for bathroom absence, seeking counseling help, business with the school office; emergency procedures such as fire drills; bus procedures; one to one orientation to BAHS; pairing with another student in the AS class and meetings with the school counselor. Teachers would also meet weekly to discuss J.E.'s transition to BAHS.

The District offered a schedule of classes including college preparatory academics, social and speech skills, transitional planning and special subjects.  The District offered reading instruction and the behavior support plan would not be implemented at the beginning of the school year, due to the need to assess J.E.'s achievement levels, including conducting a functional behavior assessment to place him at the appropriate level of instruction.  Some elements to be included in the program in fact, such as a research based reading program, writing program and peer mentor program, were not listed in the August 20, 2009 IEP.  This included baseline data, which could not be taken until J.E. should start in BAHS.

### 2. The Hearing Officer's Legal Conclusions

#### a) Appropriateness of the Proposed Placement

The District has complied with its legal obligations to

offer J.E. a free appropriate public education under the IDEIA. The July 7, 2009 IEP, offered by the District, satisfied the minimum requirements of the law.  The proposed program was individualized to address J.E.'s educational needs.  It was based upon a thorough District reevaluation performed less than one year prior to the offer.  The District re-evaluation was premised upon an up-to-date independent educational evaluation that the Parents had provided to the District, and upon which the District relied extensively.

### b) Pendency

Hill Top was J.E.'s pendent placement at the time of the revised IEP.

### c) Parents' Testimony and Criticism

The Parents' testimony cannot be relied upon to support the contention that the AS class is not an appropriate placement for J.E.  The basis for their concerns were impressionistic and not based upon any expertise in drawing inferences from the brief, episodic observations the Mother had been able to make while observing the AS class at BAHS.  The Mother ignored many of the District's assertions of what was included in the AS program IEP.  The Mother's demeanor at the hearing at BAHS made it clear that she feared the public school environment for J.E.  The

Mother had a startled reaction to an object that hit the room door, revealing that she has a "heightened sensitivity to the sometimes unruly atmosphere of a large school for adolescents." That the Mother heard students discussing bullying is an insufficient basis for her to determine that J.E. would be bullied at BAHS. The overall tenor of the Parents' testimony strongly implied that they would not accept even an appropriate placement at BAHS - rather, both Parents would always be dissatisfied with the District's offers so long as the offer including placing J.E. at BAHS.

d) Experts' Testimony

The experts were credible. However, their reliability of their conclusions were limited by their methodology. Dr. Henning did not review any of the programming documentation provided by the District and in the IEP. Instead, she based her opinion on observations of J.E. at HTPS and the students in BAHS's AS class.[3] She did not have the opportunity to observe J.E. within the AS class. Dr. Naseef did not visit BAHS or observe the AS class in determining that the environment would cause J.E. great amounts of stress.

_____

[3] This reasoning seems flawed. Although it should be important to read the IEP, observing how the AS program actually operates seems more relevant that how it reads on paper.

e) <u>Timeliness of the District's Offer</u>

"I need not allocate blame for these delays; there is an acrimonious history between these parties."  Parents contend that the District took too long to offer their plan, while the District blames Parents for delaying necessary evaluations.  It is sufficient to note that the finalized IEP was offered before the start of school and there was no evidence suggesting that any delay in implementing behavioral support, reading, or peer counseling was so extensive or fundamental as to vitiate the basic program that was offered.

Parents made much of the argument that they were unable to cooperate with any transition activities offered to J.E. before the first day of school, and that the District waited until August 20, 2009 when it was too late.  However, the record does not support this contention.  The June 2009 plan, though incomplete, offered a full range of activities for transitioning the Student to BAHS, including activities to be provided during the summer.

f) <u>Procedural Deficiencies</u>

The record overwhelmingly demonstrates that the alleged procedural failures of which the Parents complain did not cause the District to offer an inappropriate placement, as found above. The District's offered program and placement were not rendered

inappropriate by these alleged deficiencies.

        F. Plaintiff's Motion for Judgment on the Record

        Plaintiffs Motion for Judgment on the Record asks the
Court to reverse the Hearing Officer's decision and find that the
2009-2010 school year IEP offered by the District was not
appropriate for J.E. and that Hill Top is the appropriate
placement.  Plaintiffs raise nine arguments on appeal, as
follows: (1) the Hearing Officer erred in failing to consider the
issue of whether the proposal to alter J.E.'s placement from a
private to public school setting is appropriate; (2) that the IEP
proffering to place J.E. in the Autistic Support program does not
provide a fair and appropriate education; (3) the Hearing
Officer's credibility findings pertaining J.E.'s mother are
unsupported; (4) the Hearing Officer's conclusion that the offer
of an IEP was timely and complete is erroneous; (5) the IEP did
not adequately provide transitional services; (6) the IEP is not
appropriate because of the exposure to bullying; (7) J.E. is
entitled to continuation of the Hill Top placement or
alternatively to tuition reimbursement; (8) the Hill Top school
is an appropriate placement for J.E.; and (9) equities favor the
Parents.[4]

_____

        [4]    While Plaintiffs argue that to the extent equities
should be considered, they favor the Plaintiffs, the Court does
not find this argument to be relevant here and thus, will not
address it.



1. The Hearing Officer Erred in Failing to Consider the Issue of Whether the Proposal to Alter J.E.'s Placement From a Private to Public School Setting is Appropriate.

Plaintiffs argue that the Hearing Officer should have considered the impact of changing J.E.'s placement from Hill Top to BAHS because Hill Top was the original pendent placement. They argue that this should have factored into the evaluation of whether or not the change impacted the appropriateness of the District's proposed IEP.

Plaintiffs are correct.  However, the Hearing Officer did take into account the stress that J.E. will have as a result of changing atmospheres.  After considering the impact, the Hearing Officer found that the stress of the transition was not significant enough to make the District's IEP inappropriate.  He acknowledged that it may not be what is best for J.E., but that the District was offering an appropriate IEP.

2. The IEP Proffering to Place J.E. in the Autistic Support Program Does Not Provide a Fair and Appropriate Public Education.

Plaintiffs argue that the Autistic Support program does not provide J.E. a fair appropriate public education because it does not include college preparatory programs, is far below J.E.'s educational and skill level, and that the public high school atmosphere of crowded hallways and larger class sizes would be too overwhelming for J.E.  Plaintiffs point to their

experts testimony showing that the change from Hill Top to BAHS would take J.E. almost a year to adjust to, that the change would create major anxiety for J.E., and that the AS program operates below J.E.'s educational and social levels.

While Hill Top would likely be a better placement for J.E., the IDEIA requires that the District provide an IEP that is "reasonably calculated to enable the child to receive educational benefits." Rowley, 458 U.S. at 206-07. The District is not required to provide the best possible education to maximize educational benefits. Id. at 197 n.21; Polk, 853 F.2d at 178.

Plaintiffs do not have a right to compel the District to provide a specific program, here the Hill Top school, even if it is the best possible education for J.E. See Rowley, 458 U.S. at 199. Even if Hill Top is a superior placement for J.E., this does not mean that the IEP offering J.E. the Autistic Support program at BAHS is not sufficient nor inappropriate.

The Hearing Officer found that the IEP placing J.E. in the AS class meets J.E.'s needs. In finding that the July 7, 2009 IEP was appropriate, Hearing Officer Culleton recognized that the Plaintiffs' expert that testified regarding the anxiety J.E. would feel, Dr. Naseef, did not visit BAHS or observe the AS class. Also, Hearing Officer Culleton found that the AS class provided the support J.E. needs and that his classes with an individual aide working with him would sufficiently meet his

education levels.

Hearing Officer Culleton also found that the proposed IEP met the minimum requirements of the IDEIA. The record is consistent with this finding and shows that the 2009-2010 school year IEP offered by the District provided sufficient support for J.E. that is "reasonably calculated" to ensure that J.E. receive an education. There is no reason for the Court to supplant its judgment for that of Hearing Officer Culleton's.


3. <u>The Hearing Officer's Credibility Findings Pertaining to J.E.'s Mother are Unsupported.</u>

Plaintiffs point to the Hearing Officer's finding that J.E.'s mother was "hyper-sensitive" to the high school setting because she reacted to a loud noise during the hearing. Plaintiffs argue that the noise surprised everyone and that this was insufficient to support a finding that J.E.'s mother was "hyper-sensitive" to the high school setting.

On issues of credibility, the Court generally relies on the Hearing Officer who is in the best position to observe the witness. However, Plaintiffs' argument that the mother's reaction to a "loud noise" should not, alone, support a finding that she is hyper-sensitive to the high school environment is persuasive. However, Hearing Officer Culleton's finding was not supported only by the mother's reaction to this loud noise. Hearing Officer Culleton also noted that the mother repeatedly

referred to her fear of the public high school environment during her testimony.

Additionally, Hearing Officer Culleton also pointed to the fact that "the overall tenor of [the parents'] testimony about [Hill Top] strongly implies that they would not accept an appropriate placement at [BAHS] - rather, both Parents would always be dissatisfied with the District's offers." (Hrg. Off. Culleton's Opinion at 16.)  This evidence is sufficient to support Hearing Officer Culleton's credibility finding that he did not find the mother to be credible as to facts because of her fear of the public school environment.


4. <u>The Hearing Officer's Conclusion that the Offer of an IEP was Timely and Complete is Erroneous.</u>

Plaintiffs argue that the complete IEP was not timely because the Autistic Support program was not fully in place on the first day of school.  Plaintiffs argue that there was no IEP offered on July 7, 2009 and that the District did not have the authority to offer J.E. a spot in the AS class until the IEP presented on August 21, 2009.  The Plaintiffs argue that the earlier IEP did not contain attachments with critical elements of the IEP and thus they did not receive notice until they received the August 21, 2009 IEP.  Plaintiffs further argue that the August 21, 2009 IEP was also incomplete, as it only had a "draft"

schedule for J.E. that did not include a foreign language class, and that J.E. was not going to be assessed for reading placement until September 16, 2009.

The IDEIA requires that an IEP be in place as of the first day of school. 20 U.S.C. § 1414 (d)(2)(A); 34 C.F.R. § 300.323(a). Hearing Officer Culleton found that the IEP was in place by the first day of the school year. He found that the program pieces that were not fully in place were due to the fact that the students had to be evaluated during the first couple of weeks to determine what an appropriate educational program would be. The Hearing Officer found that the facts Plaintiffs pointed to were minor pieces of the IEP and were not the critical elements of it. Thus, the IEP was timely presented and in place.

5. <u>The IEP Did Not Adequately Provide Transitional Services.</u>

Plaintiffs argue that all experts and parties involved agreed that the transition for J.E. from Hill Top to BAHS would be important as it would be a difficult transition for him. Plaintiffs argue that the fact that the AS class was not starting until the school year and the fact that they did not have notice of the IEP until August 21, 2009, coupled with the fact that the Parents already had a vacation planned, did not leave sufficient time for J.E. to transition.

The District began contacting Plaintiffs as early as

April 20, 2009 to conduct a reevaluation of J.E. with the expectation of creating a new IEP for him.  Additionally, Hearing Officer Culleton found that the substantial and critical portions of the IEP were offered at the June 25, 2009 meeting, which left the Parents enough time to transition J.E.  The Court agrees with Hearing Officer Culleton's finding that there was sufficient notice to provide for suitable transition.

### 6. The IEP is Not Appropriate Because of the Exposure to Bullying.

Plaintiffs argue that BAHS would expose J.E. to bullying.  J.E. is susceptible to bullying because of his difficulty in social situations.  Additionally, J.E.'s mother observed the AS class and heard students talking to the teacher about bullying and how they should deal with bullying. Plaintiffs also point to J.E.'s history of being bullied at the Vanguard School.

Hearing Officer Culleton found that much of Plaintiffs worry was in regard to what had happened at a different school, the Vanguard School.  The Hearing Officer concluded that the AS program could appropriately deal with any bullying that occurred and that this concern was only prospective.  There is no reason for the Court to find otherwise.  J.E. may face bullying, but a fair appropriate public education does not require that the District be able to prove that a student will not face future

bullying at a placement, as this is impossible.

    7. <u>J.E. is Entitled to Continuation of the</u>
     <u>Hill Top Placement or Alternatively to</u>
     <u>Tuition Reimbursement.</u>

   Plaintiffs argue that they are entitled to tuition reimbursement to keep J.E. at Hill Top.  However, this would only be an option if the District had failed to provide an appropriate IEP.  The IDEIA allows for the parents of children with disabilities who place their children in private schools to obtain reimbursement from the public school district where it is shown that the public shcool has failed to make a timely offer of a free appropriate public education.  20 U.S.C. § 1412(a)(10)(C); <u>School Committee of Burlington v. Department of Education</u>, 471 U.S. 359 (1985).

   However, as discussed above, the Court finds that the District provided J.E. an appropriate and timely IEP.  Thus, the District will not have to continue to reimburse the Parents for J.E.'s education at Hill Top.[5]

   To the extent there is disagreement on whether the District must reimburse tuition up to this point, the District must.  This decision was made in this Court's previous Order as

   [5] To the extent there is disagreement on whether the District must reimburse J.E.'s Hill Top tuition up to this point, the District must do so.  This decision was made in this Court's previous Order on October 12, 2010, as Hill Top is J.E.'s pendent placement through the completion of this case in the District Court.

Hill Top is J.E.'s pendent placement through the completion of this action.

            8. The Hill Top School is an Appropriate
                Placement for J.E.

        Plaintiffs argue that Hill Top meets the requirement of being an appropriate placement for J.E.  However, this does not seem to be in dispute.  While it is clear that Hill Top is appropriate, the question turns on whether or not the IEP offered by the District was appropriate.

                            * * *

        As Plaintiffs' arguments fail to show that the Hearing Officer's factual findings were not supported by the record or that the Hearing Officer's legal conclusions were inconsistent with the requirements of the IDEIA, Plaintiffs' Motion for Judgment on the Record will be denied.


        G. Defendant's Motion for Judgment on the Record

        Defendant's Motion for Judgment on the Record asks the Court to affirm the Hearing Officer's decision and find that the 2009-2010 school year IEP offered by the District was appropriate for J.E. and that Plaintiffs are not entitled to further reimbursement for J.E.'s tuition and transportation costs to Hill Top.  Defendant raises seven arguments: (1) the July 7, 2009 IEP does exist; (2) the IEP was timely; (3) the IEP was appropriate;

(4) the Hearing Officer's credibility determination regarding the mother was warranted; (5) there is no viable Section 504 claim for this Court to consider; (6) expert witness fees are not an available remedy; and (7) Parents are not entitled to Attorney's Fees.

First, Defendants argument that there was a July 7, 2009 IEP is likely in response to the Plaintiff's claim that there was only a June 25, 2009 IEP that was amended after the meeting. This argument is one of semantics and is immaterial. The relevant fact is that between the June 25, 2009 IEP and the August amendments, Plaintiffs had sufficient notice of the proposed IEP in order to transition J.E. properly from Hill Top to BAHS.

Defendant's second, third, and fourth arguments have been addressed above. The Court concludes that the 2009-2010 school year IEP offered by the District was timely and that the IEP provided an appropriate education and placement for J.E. Also, the Court finds that the Hearing Officer's credibility conclusion that J.E.'s mother was "hyper-sensitive" to the public school atmosphere was appropriate in light of all the evidence but not simply for the reason that she reacted to a loud noise.

Defendants fifth, sixth, and seventh arguments are irrelevant. Defendants argue that Plaintiffs indirectly assert a Section 504 claim, and that the Court should not consider this.

However, as the Court finds that Plaintiffs do not assert such a claim there is no need for the Court to address this argument. Also, as the Court is denying Plaintiffs' Motion for Judgment on the Record, Defendant's argument regarding Plaintiffs' requests for expert witness fees, attorneys fees, and costs are moot.

Ultimately, Hearing Officer Culleton conducted a thorough hearing with the involvement of many witnesses from the District, the Parents, and two experts provided by Plaintiffs. The Plaintiffs were represented by competent counsel throughout the process. Hearing Officer Culleton's opinion is thorough and well-reasoned.

Courts have been cautioned against supplanting the Court's judgment for that of the state agency, with expertise in the field. In this case, there is insufficient evidence that undermines the Hearing Officer's conclusions. Indeed, the record as a whole supports the facts found by the Hearing Officer and the legal conclusions he reached are consistent with the requirements of the IDEIA. Under these circumstances, the Court finds no reason to disturb the decision of the Hearing Officer.

## IV. CONCLUSION

For the reasons stated above, the Court will grant the District's motion and deny Plaintiffs' cross motion; therefore, affirming the Hearing Officer's decision. An appropriate order

will follow.